IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY COCHRAN | * | |
| Petitioner | * | |
| v | * | Civil Action No. JKB-21-154 |
| R. MALDONADO | * | |
| Respondent | * | |
| | *** | |

**MEMORANDUM OPINION**

Petitioner Larry Cochran is challenging the execution of his sentence by petitioning this Court pursuant to 28 U.S.C. § 2241 to restore his good conduct credits. ECF No. 1. Respondent, R. Maldonado, Warden of the Federal Correctional Institution Cumberland, Maryland ("FCI Cumberland"), filed a Motion to Dismiss the Petition (ECF No. 9), to which Cochran has filed a Reply. ECF No. 14. Also pending are Cochran's motions for the Court to take "Judicial Notice of Indisputable Adjudicative Facts," (ECF Nos. 10, 19), and emergency motions seeking an immediate or expedited ruling on the Petition. ECF Nos. 15, 17, 20. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For reasons set forth below, Cochran's pending motions will be denied and Respondent's Motion to Dismiss will be granted.

**I. Background**

Cochran is a federal inmate incarcerated at FCI Cumberland. On January 15, 2021, he filed this Petition, alleging that during the time he was housed at the Federal Correctional Institution Elkton, Ohio ("FCI Elkton") he was improperly found guilty by a disciplinary hearing officer ("DHO") of attempted escape and sanctioned with the loss of 41 good conduct credits and 180

days of phone and commissary privileges and sentenced to 60 days of disciplinary segregation. ECF No. 1 at 2, 6-7. The Petition alleges that Cochran was denied due process at his disciplinary hearing (*see* ECF No. 1 at 6-7; ECF No. 1-2 at 2), that he did not attempt to escape, and that the evidence against him was insufficient. ECF No. 1-2 at 4–5. Cochran requests reversal or vacatur of the hearing officer's finding of guilt and restoration of his good conduct credits.

The United States District Court for the Northern District of Ohio described the facts relevant to this claim in a memorandum opinion and order dated December 9, 2020, denying Cochran's August 31, 2020, Emergency Petition for Writ of Habeas Corpus which similarly sought to expunge the incident report and restore his good time credits. ECF 9-2 and 9-3.

> On August 12, 2019, the medical director, Jeffrey D. Allen, M.D. submitted a report in which he noted Petitioner's medical history, his abilities, and his limitations in a memorandum to the associate general counsel. Dr. Allen concluded that Petitioner did not meet the BOP debilitated RIS [1] criteria at the time, stating that "[a]lthough [Petitioner] requires some assistance with many of his *** needs, it is largely comprised of set-up assistance, after which, he is independent. When he is in his wheelchair, he is mobile and not confined to his room. Then on October 7, 2019, in a memorandum to Warden Williams, the assistant director/general counsel, Ken Hyle, denied Petitioner's request having concluded that Petitioner "is not completely disabled and remains capable of performing most of his self-care, [and] he does not meet the criteria for RIS.
>
> On December 5, 2019, Ben McGowan, Correctional Treatment Specialist at Elkton, indicated that there are three reports denying Petitioner's request for release. McGowan noted that "[o]riginally it appeared as if [Petitioner] was medically cleared however [he] did not have an approved release plan. Upon further review after [Petitioner] resubmitted, he was found not to be qualified." McGowan stated that Petitioner received copies all of the denials.
>
> On March 26, 2020, Lieutenant G. Shaffer completed an incident report in which he stated that he completed an investigation into Petitioner's June 26, 2019 renewed request for release. Lieutenant Shaffer concluded that Petitioner attempted to escape from prison by submitting an altered federal document to the United States District Court for the Northern [District of] Indiana in support of his compassionate release request. The lieutenant noted that he considered the following evidence: the altered "approval" letter from

---

[1] Reduction in Sentence ("RIS").

> the warden; Elkton's outgoing legal mail log from June 26, 2019; the letter on record in the warden's office denying Petitioner's request; an interview with Petitioner in which he admitted to sending the false approval letter despite knowing his compassionate release had been denied; and inmate interviews that revealed Petitioner completed his own legal work without assistance. Lieutenant R. Platt delivered the incident report to Petitioner on May 7, 2020.
>
> On May 12, 2020, a disciplinary hearing was conducted before the Disciplinary Hearing Officer ("DHO"). The DHO report indicated that Lieutenant Platt provided Petitioner with advanced written notice of the escape charge (a copy of the incident report) on May 7, 2020, and Petitioner was advised of his rights before the DHO on May 11, 2020. The petitioner waived his right to witnesses.
>
> The DHO considered the reporting staff member's written statement; the petitioner's testimony; the petitioner's written statement; an email message from Gary Bell, the Northern District of Indiana U.S. Attorney's Office Criminal Division Chief, indicating that the Court believed Petitioner was attempting to escape from prison through fraud; the altered Warden letter indicating Petitioner's release was approved; the authentic Warden letter indicating Petitioner's release was denied; the BOP's compassionate release request stating that following review, Petitioner's request was denied; the U.S. District Court for the Northern District of Indiana's December 2019 response indicating that Petitioner submitted an altered letter that appeared to have originated from the Elkton warden's office; and Elkton's legal outgoing mail log signed by Petitioner and dated June 26, 2019.
>
> On May 18, 2020, the DHO found Petitioner had committed the prohibited act of escape and sanctioned Petitioner as follows: (1) 41 days disallowance of good conduct time; (2) 60 days disciplinary segregation; (3) 180 days loss of phone; and (4) 180 days loss of commissary.

ECF No. 9-2 at 2-4. [citations omitted]. The Ohio court noted that inmates have no "due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings." *Id.* at 6 (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–66 (1972)). Further, the court concluded there was "ample evidence in the record to support the DHO's finding of guilt." ECF No. 9-2 at 7. The court certified pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its decision "could not be good faith." *Id.*

Respondent argues that Cochran's Petition presents the same facts and claims that were

before the United States District Court for the Northern District of Ohio. As noted, that court found the claims meritless, denied the petition, and dismissed the matter. Respondent argues that because the instant Petition rehashes claims already considered, denied, and dismissed or raises claims that could have been raised in the prior petition, the instant petition should be dismissed as an abuse of the writ pursuant to 28 U.S.C. §2244(a).

## II. Discussion

Respondent asserts the instant petition is almost identical to the petition Cochran filed in the Northern District of Ohio which was denied and the instant petition should be dismissed under 28 U.S.C. § 2244(a). *See* ECF No. 9-1 at 5-7 (comparing petitions). That provision provides:

> No circuit or district court shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of [a federal prisoner] if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a); *see also See also, Hurwitz v. Gunja,* 350 (4th Cir. 2001) (quoting § 2244(a) and noting habeas review will not serve as an appeal). Further, courts have held that § 2241 petitions are subject to dismissal under § 2244(a). *See, e.g., Sweeney v. U.S. Parole Comm'n,* 197 F. Supp. 78, 81 (D.D.C. 2016) (internal quotation marks omitted) ("Section 2244(a) applies with full force to claims brought under § 2241, notwithstanding the mention of § 2255.") (collecting cases); *Walton v. U.S. Parole Comm'n,* No. 07-cv-00890, 2008 WL 341637 (D. Co. Feb. 5, 2008) ("Petitions for relief under § 2241 fall within the ambit of 28 U.S.C. § 2244(a).").

Before the enactment of the statutory gatekeeping requirements on successive habeas petitions,[2] the Supreme Court developed the "abuse of the writ" doctrine to limit review of successive habeas petitions. *See McCleskey v. Zant,* 499 U.S. 467, 490-86 (1991). The abuse of

---

[2] *See* Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. 104-132, Title I, §§ 101, 106, Apr. 24, 1996, 110 Stat. 1217, 1220.

4

the writ doctrine provided that "a court could decline to hear a claim that was both raised and adjudicated in an earlier petition." *Stanko v. Davis*, 617 F.3d 1262, 1270 (10th Cir. 2010) (citing *Sanders v. United States*, 373 U.S. 1, 11-12 (1963)). The Court also stated that "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice [or from inexcusable neglect]." Nevertheless, under the abuse of the writ doctrine "[e]ven if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground." *Sanders*, 373 U.S. at 16.

Respondent argues the abuse of the writ doctrine applies to § 2244(a) to bar Cochran's § 2241 petition. In *Sanders,* 373 U.S. at 13, the Court observed "[section] 2244 was obviously not intended to foreclose judicial application of the abuse-of-writ principle . . . ." Rather, the statute incorporates "longstanding principles of habeas practice," including the application of the "abuse of writ doctrine" to successive habeas petitions. *In re Williams*, 364 F.3d 235, 239 (4th Cir. 2004) (discussing successive applications under § 2244(b)(2)). Declining to adjudicate nearly identical petitions serves interests of judicial efficiency and finality. *Stanko*, 617 F.3d at 1270 (citing *Sanders*, 373 U.S. at 11–12) ("When enacted, the Court interpreted § 2244 as merely codifying the judicially developed principle that a court could decline to hear a claim that was both raised and adjudicated in an earlier petition.").

The court agrees that this petition is duplicative and represents an abuse of the writ. Moreover, Cochran does not demonstrate the interests of justice warrant consideration of this petition. It is clear that the Northern District of Ohio thoroughly examined the record and was satisfied that Cochran's disciplinary hearing satisfied the requirements of substantive due process,

5

and ample evidence substantiated the DHO finding that Cochran was guilty of escape. Cochran's disagreement with this decision does not support a due process claim.

However, the instant petition, liberally construed, arguably adds one additional claim to this otherwise duplicative petition by alleging that Cochran may have received less than 24 hours notice before his disciplinary hearing.[3] *See* ECF 9-3 at 3-4 (identifying notice date as May 11, 2020 and the hearing date as May 12, 2020, without alleging failure to satisfy 24 hour notice); *see also* ECF 9-2 at 6 ("Indeed, the record reflects that . . . Petitioner received a copy of the incident report on May 7, 2020, and the disciplinary hearing was held on May 12, 2020.") Assuming this allegation to be true, it does not warrant relief because Cochran does not allege cause or prejudice. The abuse of the writ doctrine requires an external cause for failure to advance a claim that could have been raised in the initial petition and a showing that disallowing the claim would result in fundamental injustice. *Stanko*, 617 F.3d at 1271. Cochran does not allege Respondent, or any other party, hindered him from raising this claim before the court in Ohio. Moreover, he clearly was aware of the facts underlying this claim, since he knew what time he allegedly received notice of the hearing and when the hearing was held at the time he filed his first petition. ECF 9-3 at 3–4 (discussing receipt of notice on May 11, 2020).

## III. Conclusion

For these reasons, the Petition will be dismissed with prejudice. Cochran's Motions to Take Judicial Notice of Indisputable Adjudicative Facts, (ECF Nos. 10, 19, 20)[4] and Emergency Motions for Immediate Ruling (ECF Nos. 15, 17) are denied. A separate order follows

---

[3] Of note, Cochran did not list this allegation as a ground for relief. ECF No. 1 at 6-7.
[4] These motions essentially repeat Cochran's petition, reply, and resubmit exhibits already filed with those pleadings.

6

Dated this ___7___ day of October, 2021.

FOR THE COURT:

_James K. Bredar_ (signature)

James K. Bredar  
Chief Judge